# THE STATE v. JOSEPH T. WEISMAN, Appellant.

## Division Two, December 19, 1911.

1. **ELECTION: Fraudulent Registration: Conspiracy: In Precincts Other Than One Charged: Identity.** Proof that members of a conspiracy committed various felonious acts in furtherance of the common plan, is competent as bearing upon and explaining the act charged in the indictment, which also was committed in furtherance of the common plan. It is competent to prove other acts so related to the act on trial as to show motive, intent, absence of mistake, a common scheme embracing two or more crimes so related to each other that proof of the one tends to establish proof of the other, as also to prove identity of the person charged with the crime, even if such evidence tends to establish other specific crimes. So that, where defendant was indicted for feloniously inciting and procuring a gang of negroes to fraudulently register, and the particular charge was that he did feloniously incite and procure one Everson to commit said felony in the sixth precinct, it was competent to permit the State to introduce evidence tending to show that Everson on said day fraudulently registered in two other precincts, and that two other persons belonging to said gang fraudulently registered during said day.

2. **IMPEACHMENT OF WITNESS: Indicted: Convicted: Explanation.** Where a witness for the State, upon cross-examination, admitted that he was under indictment for perjury, it is not error to permit the State, upon re-direct examination, to ask him if he had ever been convicted of any offense. Likewise, where another witness on cross-examination, admitted he had been convicted of perjury, it was not error to permit the State, upon re-direct examination, to show that he had never before been convicted of any other offense.

3. **INSTRUCTION: Inciting and Procuring Another to Commit Crime: Credibility of Witnesses Connected with Similar Crimes.** Upon the trial of a defendant for inciting and procuring others to fraudulently register, at which witnesses had been permitted to testify to other acts of fraudulent registration than the particular one individuated in the indictment, an instruction telling the jury that "in making up your verdict it is your duty to consider exclusively the question of the guilt or innocence of this defendant . . . without regard to the question of the probable guilt or innocence of any other person of any crime, except that you are required to consider the probability of the guilt of any witness testifying herein, as disclosed in evidence of criminal connection with the offense charg-

ed, or his guilt of any other criminal offense, as tending to affect the credibility of such witness and the weight to be given to his testimony," although subject to verbal criticism, is not error, when taken in connection with another plainly directing that defendant could not be convicted unless the other person named in the indictment actually committed the crime charged against him, and with another confining the jury's attention to defendant's guilt as charged.

4. **INSTRUCTIONS: Considered as a Whole.** Instructions must be read together and considered as a whole, and as they would impress men of ordinary intelligence. To single out one instruction, and to put a strained construction upon it, that may, because it stands alone, be misleading, would be to make an intelligent system of writing instructions impracticable, if not impossible.

5. ————: **Former Testimony.** To instruct as to each item of testimony is not permissible. The court did not err in refusing to give an instruction calling the jury's attention to testimony to the effect that on a former occasion witnesses had given testimony contradictory to that given at the trial, and telling them if they so found they were at liberty to disregard the present testimony of such witnesses. An instruction telling them that, in passing upon the credibility of witnesses, they were to consider "all the facts and circumstances in evidence" was sufficient.

6. **SUFFICIENCY OF EVIDENCE: Profligate Witnesses: Province of Court.** Notwithstanding the wicked and profligate character of the witnesses, if their testimony, assumed to be true, as the court must assume, where the jury have believed it, is substantial and sufficient to support a verdict of guilty, the verdict must stand.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

AFFIRMED.

*C. Orrick Bishop* for appellant.

(1) The court gravely erred in permitting the State to give evidence of several different and distinct offenses committed by the alleged principal Percy Everson on the day named. Appellant was charged solely and specifically with the offense of procuring the said Everson to fraudulently register in the sixth election

precinct of the third ward, under the name of Percy Everson; in no other precinct and under no other name. If Everson did so register in said precinct, fraudulently and with felonious intent, and appellant did procure him to do so, with felonious intent, then the offense charged was made out; otherwise not. No number of other fraudulent registrations on the same day could add to that guilt, nor was evidence of them either necessary or competent to establish that guilt. The act itself, if knowingly done, proved its intent. The purposes for which such testimony is admitted, in exception to the general rule, have been clearly and fully stated in the recent decision of this court in State v. Hyde, 234 Mo. 200; and it certainly did not require any such evidence in this case, even assuming that the testimony of any one of the alleged accomplices was true. These separate and distinct registrations could not have been charged in one count, nor in separate counts of the same indictment; nor can the evidence of one be held to sustain the other. The 10th instruction I consider gravely erroneous, and the most peculiar instruction I have ever encountered. The jury were told that in making up their verdict it was their duty to exclusively consider the guilt of this appellant without regard to the probable guilt or innocence of any other person of any crime. In other words, they might find appellant guilty of aiding and abetting Everson in the commission of a felony (as charged in the indictment) without any regard to the probable guilt of Everson.

*Elliott W. Major,* Attorney-General, and *James T. Blair,* Assistant Attorney-General, for the State.

(1) Objection was made and exception taken to the action of the court in admitting evidence of what was said and done by Everson, Holland, Robinson, Branch, Isabel, et al., after appellant had indicated

to their spokesman, Isabel, his wish and intention to secure some fifty illegal registrations in the Third ward on February 18. The objection was grounded on the contention that the indictment was not "based on conspiracy and under the statute of conspiracy." The competency of the evidence under such a charge —"based on conspiracy"—was expressly admitted, and asserted by counsel for appellant. Counsel simply contended that where the charge "is a charge of accessory before the fact the rules of evidence are different," and conceded that "if he were charged with conspiracy, however, the doing of one would be that of all," but contended that "in this case it would not be," concluding "that's the distinction we make." (a) The objection made below cannot be amplified here. Williams v. Dittenhoeffer, 188 Mo. 142; O'Neill v. Kansas City, 178 Mo. 100; R. S. 1909, sec. 5245; State v. Miles, 199 Mo. 559. (b) Restricting the scope of the objection here as counsel restricted it below, as under the authorities must be done, the question raised presents no difficulty. "A conspiracy is a combination by two or more persons to do a thing criminal or unlawful in itself, and may be proven by facts and circumstances." State v. Kennedy, 177 Mo. 119; State v. Sykes, 191 Mo. 78. And it is not necessary that the co-conspirators be either indicted or tried together to render the declaration of one admissible against the other. State v. Bobbitt, 228 Mo. 266; State v. Kennedy, 177 Mo. 164 et seq.; State v. Sykes, 191 Mo. 78; State v. Boatright, 182 Mo. 46. The order of proof is of no great importance. State v. Miller, 191 Mo. 608; State v. Kennedy, 177 Mo. 132. And an indictment merely charging one with the commission of an offense is broad enough to let in the evidence of a conspiracy, between the indictee and another, to commit the crime. State v. Miller, 191 Mo. 591; State v. Bobbitt, 228 Mo. 266; State v. Sykes, 191 Mo. 79. The statute (Sec. 4441, R. S. 1909), specifically declares it a distinct

crime to "procure . . . any person . . . to do any act by law forbidden, or constituted an offense." With this very offense appellant was charged, and of it he was convicted. This court affirmed the judgment in the case of State v. Enoch Bobbitt, 215 Mo. 39, in which the evidence of conspiracy was no. stronger than here. The crime of which he was convicted was not contemplated by the conspirators, but was committed during an effort to commit arson. Bobbitt was not present at all. The present case is not a prosecution for conspiracy, it is true, but it is a prosecution for the commission of the crimes which were the objects of the conspiracy. If one hires others to commit a crime and greed is the sole bond of union connecting the rest with the arch-conspirator, is the latter less guilty than if all acted together from motives of revenge? Would the rules of evidence be different in the two cases? Any agreement between two or more to commit a crime or crimes constitutes a conspiracy. The case cited above, when the rules laid down there are applied to this record, demonstrates that the testimony objected to was competent. Should it be said appellant did not employ Everson to register fraudulently, the answer is that he acted through another and *"qui facit per alium, facit per se"* is a maxim always applicable in a case like this. Though one is charged as accessory, merely, yet declarations of the principal are admissible on the theory that the two were acting in concert. State v. Ross, 29 Mo. 51; State v. Phillips, 117 Mo. 394. What any one of several principals does or says, when there are several principals, would seem as competent as what is done by a sole principal, the accessory being on trial in each case, and the whole system of crimes contemplated by the conspirators was admissible. State v. Williamson, 106 Mo. 169; Underhill on Crim. Ev., secs. 88 et seq; Gillett on Ind. and Col. Ev., sec. 57, pp. 79, 80; 3 Ency. Ev., pp. 413, 414 and notes. (2) The 10th instruction

was, in substance, approved in State v. Bobbitt, 228 Mo. 268. (3) The 11th instruction properly limited the effect of the evidence as to other offenses committed in furtherance of the common design. The registration of Everson was but an incident in the general plan. All the acts done by the conspirators in furtherance of the conspiracy were competent, though their acts constituted crimes. If this instruction is not the law, then conspirators by making every act done a crime of itself could go scot-free. Gillett on Ind. and Col. Ev., sec. 57 and notes.

FERRISS, J.—Convicted in the circuit court of the city of St. Louis of the crime of fraudulent registration, and sentenced upon the verdict of the jury to two years in the penitentiary, defendant appeals.

The State gave in testimony tending to prove that on the 18th day of February, 1909, a general registration of electors being in progress in the various precincts in the city of St. Louis, the defendant procured and incited a gang of negroes to fraudulently register in several precincts, some in precincts other than where they resided, and some in names other than their own, and that there was a common scheme to violate the registration law, participated in by the members of this gang and by the defendant. The particular case upon which defendant was tried was this: One member of this conspiracy, Percy Everson, registered in the sixth precinct of the third ward, giving his residence as 1012 Carr street, which number was in such precinct, when in fact he did not reside at such number nor within such precinct at all. The indictment charged such fact, with proper allegations of fraudulent knowledge and purpose, also that the defendant "did unlawfully, feloniously and willfully incite, move, procure, aid, counsel, hire and command the said Percy Everson to do and commit said felony."

The testimony for the State was elicited from several members of the gang, including Percy Everson, all of whom implicated the defendant as the moving spirit. These witnesses all admitted on the stand that they had testified to the contrary of their present evidence before the grand jury and on former trials, and two of them that they had pleaded guilty to perjury committed at such former hearings. Witness Isabel testified that he was then under indictment for perjury in this matter. There was also testimony given in by the circuit attorney that defendant had confessed the crime to him.

Evidence was admitted on the part of the State that the said Percy Everson and others of the gang had registered on this same day at other precincts, and in false names.

Defendant did not testify. He produced testimony tending to prove good character, and also to establish an alibi.

The court gave seventeen instructions, and refused twelve that were requested by defendant.

The defendant in his brief presents, with the ability and candor that uniformly characterize the writer thereof, several points which we will proceed to discuss.

I. It is contended that the court erred in permitting evidence to go to the jury tending to prove that the alleged principal, Everson, on the same day, fraudulently registered in two precints other than the 6th precinct of the third ward charged in the indictment, and erred also in permitting the State to show that others of the alleged gang to which Everson belonged, namely Priest and Bennett, fraudulently registered during that same day. It is argued that proof that the defendant incited and procured such other registrations does not tend to prove that he incited Everson to register in the aforesaid 6th precinct. In this

connection it is also argued that the eleventh instruction given for the State was erroneous in that it permitted the jury to infer that "if appellant was guilty of a felonious intent in inciting Priest or Bennett to register, why, then, he must have had a felonious intent in inciting Everson to do so."

Counsel argues that if there was evidence tending to show that defendant incited Everson to register in the 6th precinct, this was enough, and that testimony as to other fraudulent registrations by Everson and others was "unnecessary," and therefore incompetent.

It is true that, if defendant feloniously incited Everson to fraudulently register in the 6th precinct, and if he did so register, a case is made out for the State; that is, the charge in the indictment. It by no means follows, however, that in attempting to prove this charge, the State is confined to the act of registration by Everson in the sixth precinct. Whether proof is or is not necessary is not a proper test of its competency. Either party may strengthen his case by all proper and relevant testimony. The testimony so objected to was admitted on the theory that it was so related to the offense charged in the indictment as to throw light upon the intent with which Everson registered in the sixth precinct, and also upon the intent with which defendant incited such registration. It was necessary that the State show that the registration charged in the indictment was fraudulent on the part of both Everson and the defendant, to negative mistake. An ignorant man might by honest error register in the wrong precinct; but if, on the same day, he registers in two other precincts, this fact would certainly tend to show a criminal intent in each case. The evidence for the State tends to show that the defendant instigated the offenses committed by Everson, Priest, Bennett and others, all of whom, with defendant, were parties to a conspiracy to procure false

registrations on the day in question. Consequently, the act of each conspirator was in law the act of defendant. Proof that members of this conspiracy committed various felonious acts in furtherance of the common plan, is competent as bearing upon and explaining the act charged in the indictment, which also was committed in furtherance of the common plan. It is competent to prove other acts so related to the act on trial as to show motive, intent, absence of mistake, a common scheme embracing two or more crimes so related to each other that proof of one tends to establish the other, as also to prove the identity of the person charged with the crime, even if such evidence tends to establish other specific crimes. [State v. Bailey, 190 Mo. l. c. 280; State v. Hyde, 234 Mo. l. c. 224.]

From the foregoing it will be perceived that the evidence complained of was competent upon grounds other than intent, to which ground the court confined it in instruction numbered 11 for the State. In so confining it, the court favored the defendant. The evidence was properly admitted, and defendant cannot complain of said instruction, which reads as follows:

"The jury are instructed that the only question before the jury is the guilt or innocence of Joseph T. Weisman of the offense charged in the indictment, that is, unlawfully, wrongfully and intentionally procuring, aiding or counseling Percy Everson to unlawfully, wrongfully, intentionally, falsely and fraudulently register in the sixth election precinct of the third ward of the city of St. Louis, in the State of Missouri, not having a lawful right to register therein, and the jury are instructed that the evidence of other similar offenses committed on or about the same day by the defendant, acting alone or acting jointly with others, if the jury believe from the evidence that other similar offenses were so committed, was admitted for the purpose of showing the intent with which the defendant, Joseph T. Weisman, acted in this case, and for the

purpose of showing a series of offenses of the same character as throwing light on the question of his guilt or innocence of the offense charged in the indictment herein, and must be considered by the jury for this purpose only, and if the jury find from the evidence that the said Joseph T. Weisman did not commit the offense as charged in the indictment in this case, and as defined in these instructions, they will find him not guilty.''

II. The next complaint is that the State was permittted to prove good character for its witnesses before their character was assailed by the defense. This is what happened: Witness Isabel admitted on his cross-examination by defendant that he was under indictment for perjury committed upon a former hearing. On re-examination by the State, the witness was permitted, over defendant's objection, to testify that he had never been convicted of any offense. Another witness for the State, Claud Benton, testified on cross-examination that he had been convicted of perjury committed before the grand jury in connection with the offense with which defendant was charged. The State, on re-direct examination, showed by the witness that he had never before been convicted of any offense.

Counsel for defendant seeks to draw a distinction between an attack on the credibility of a witness and an attack on his character. Without regard to the validity of such distinction, it is clear that the object of the cross-examination was to discredit the witness before the jury. It would have been competent under the authorities, and upon reason, for the State to sus-. tain the witness by proof of good character. That right exists whenever evidence is introduced discrediting the witness, whether such evidence is in the form of a general attack on the character of the witness, or directed to specific acts which discredit the witness.

[Wick & Co. v. Baldwin, 51 Ohio St. 51; Berryman v. Cox, 73 Mo. App. l. c. 74; Wigmore on Ev., sec. 1106.]

We are not prepared to say that when, on cross-examination, it is shown that a defendant has suffered a conviction, it is error to show in rebuttal that such conviction is the first and only one. Nothing appearing beyond the fact that the defendant was convicted of a particular offense at a particular time, the presumption would be that he had not been convicted before that time of any other offense. The negative fact elicted by the State, and objected to in this case, therefore adds nothing to and detracts nothing from the force of the fact brought out in cross-examination. It is unimportant, could not affect the jury, and does not amount to reversible error. Furthermore, as to the case of witness Isabel, the evidence of his having been indicted was incompetent (State v. Wigger, 196 Mo. 98), and the State could show by the witness that he had not been convicted under the indictment. We therefore rule this point against the defendant.

III. Instruction numbered 10 given for the State reads thus:

"The jury are instructed that in making up your verdict it is your duty to consider exclusively the question of the guilt or innocence of this defendant, under the evidence and the law as declared in these instructions, without regard to the question of the probable guilt or innocence of any other person of any crime, except that you are required to consider the probability of the guilt of any witness testifying herein, as disclosed in evidence of criminal connection with the offense charged, or his guilt of any other criminal offense, as tending to affect the credibility of such witness and the weight to be given to his testimony."

It is urged that this instruction ignores the question of the guilt of the principal in the felony, Percy Everson, upon the establishment of which the guilt of

defendant depended. We have heretofore criticised the phraseology of this instruction in State v. Bobbitt, 228 Mo. l. c. 267, and State v. Robinson, 236 Mo. 712, but in both cases held that it was not reversible error. Instruction numbered 5, for the State, plainly tells the jury that they cannot convict defendant unless and until they find that Everson had committed the acts charged against him in the indictment. The jury could not fail to understand that it was essential to find the guilt of Everson. There was much testimony in the case touching the guilt of other members of the conspiracy, and which was admitted for reasons discussed above. For the purpose of guarding defendant against any unfavorable inference against him that might possibly be drawn by the jury from the mere fact that these other crimes had been committed, this instruction, numbered 10, sought to confine their attention to the question of the guilt of defendant as charged, and as defined in other instructions, including instruction numbered 5, which involved the finding that Everson was also guilty. Instruction numbered 11 amplified this matter further as to the limitations within which the jury should consider evidence of other crimes. The instructions must be read together and construed as a whole, and as they would impress men of ordinary intelligence. To permit parties to single out an instruction, and object thereto because a strained possible construction put upon it, standing by itself, might be unfavorable or misleading, would make an intelligent system of written instructions impracticable if not impossible. This instruction was favorable to defendant and, considered in connection with the others, could not mislead the jury.

IV. Defendant requested instructions calling attention to testimony to the effect that on a former occasion witnesses had given testimony contradictory to

that given at the trial, and telling the jury that if they so found, they were at liberty to disregard the present testimony of such witnesses. We think the attention of the jury was sufficiently directed to this evidence when they were instructed that, in passing upon the credibility of witnesses, they should consider "all the facts and circumstances given in evidence." It must be assumed that jurors have ordinary intelligence. There would be no limit to the number of instructions if it were permissible to instruct as to the effect of each item of testimony. Such instructions are not permitted under our system of practice. These observations apply to and dispose of the objections to the action of the court in refusing other instructions requested by defendant.

V.  We have examined the record otherwise, beyond the points suggested in defendant's brief. Defendant was fairly tried and was convicted upon ample evidence to sustain the verdict of the jury, assuming, as we must, that the jury believed, as they had a right to believe, the testimony given in by the State, notwithstanding the wicked and profligate character of the witnesses.

Finding no error in the record, the judgment is affirmed. *Kennish, P. J.,* and *Brown, J.,* concur.